THOMAS et al., Appellants,

v.

JACKSON HEWITT, INC., Appellee.

[Cite as *Thomas v. Jackson Hewitt, Inc.*, 192 Ohio App.3d 732, 2011-Ohio-618.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 95019.

Decided Feb. 10, 2011.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Nicole T. Fiorelli; Ronald Frederick & Associates Co., L.P.A., and Ronald I. Frederick; and Roddy Klein & Ryan, John Roddy, and Elizabeth A. Ryan, for appellants.

Baker & Hostetler, L.L.P., John B. Lewis, and Karl Fanter; and Skadden, Arps, Slate, Meagher & Flom, Richard L. Brusca, Paul A. Solomon, and Ray D. McKenzie, for appellee.

KATHLEEN ANN KEOUGH, Judge.

{¶ 1} Plaintiffs-appellants, Nancee and Paul Thomas, appeal the trial court's decision granting the motion of defendant-appellee, Jackson Hewitt, Inc. to dismiss. Finding no merit to the appeal, we affirm.

{¶ 2} In September 2009, Nancee Thomas filed a putative class-action complaint against Jackson Hewitt. The class action was brought by Thomas individ-

ually and on behalf of a class of Ohio residents who had sought Jackson Hewitt's assistance in obtaining a refund-anticipation loan ("RAL"). The complaint alleged that Jackson Hewitt violated Ohio's Credit Services Organization Act ("CSOA"), R.C. 4712.01 et seq., in its RAL practice. Specifically, Thomas alleged that Jackson Hewitt received payment or arranged RALs on behalf of Ohio consumers without first meeting the requirements of the CSOA by, among other violations, failing to (1) register as a credit-service organization ("CSO"), (2) obtain a surety bond, (3) provide consumers with a three-day right to rescind the transaction, and (4) provide contracts with the required disclosures.

{¶ 3} In response, Jackson Hewitt moved for dismissal pursuant to Civ.R. 12(B)(6) and 12(B)(7), arguing that it was not required to comply with the CSOA because (1) Thomas was not a "buyer" as defined under the CSOA, (2) Jackson Hewitt was not a CSO, as defined under the CSOA, (3) Thomas had not suffered any injury, and (4) all necessary parties were not made parties to the action.

{¶ 4} Thomas filed a first amended class-action complaint for the sole purpose of adding her husband, Paul Thomas, as a named plaintiff. The parties stipulated that the motion to dismiss filed by Jackson Hewitt in response to the initial complaint would also apply to the first amended complaint. Accordingly, Jackson Hewitt moved for dismissal pursuant to Civ.R. 12(B)(6).[1]

{¶ 5} The trial court granted Jackson Hewitt's motion to dismiss and ruled, "Jackson Hewitt is not a credit services organization as defined by R.C. 4712.01. Moreover, this court finds that plaintiff has failed to set forth any identifiable damages."

{¶ 6} The Thomases appeal, arguing in their sole assignment of error that the trial court erred when it granted Jackson Hewitt's motion to dismiss.

## Standard of Review

{¶ 7} This court's review of a motion to dismiss pursuant to Civ.R. 12(B)(6) is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶ 5. In resolving a Civ.R. 12(B)(6) motion, a court is confined to the allegations in the complaint, and as an appellate court, we must independently review the complaint to determine whether dismissal was appropriate. *McGlone v. Grimshaw* (1993), 86 Ohio App.3d 279, 285, 620 N.E.2d 935. A complaint cannot be dismissed unless it appears beyond all doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 327 N.E.2d 753.

---

1. The Thomases' filing of their first amended complaint made Jackson Hewitt's Civ.R. 12(B)(7) argument that Nancee Thomas failed to join all necessary parties moot.

{¶ 8} It is well settled that "when a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 60, 565 N.E.2d 584, citing *Mitchell v. Lawson Milk* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. While the factual allegations of the complaint are taken as true, "[u]nsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss." *State ex rel. Hickman v. Capots* (1989), 45 Ohio St.3d 324, 544 N.E.2d 639, citing *Schulman v. Cleveland* (1972), 30 Ohio St.2d 196, 198, 59 O.O.2d 196, 283 N.E.2d 175, and *Mitchell* at 193. Moreover, "[l]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Williams v. U.S. Bank Shaker Square*, Cuyahoga App. No. 89760, 2008-Ohio-1414, 2008 WL 802523, at ¶ 9, quoting *Crane & Shovel Sales Corp. v. Bucyrus–Erie Co.* (C.A.6, 1988), 854 F.2d 802, 810.

Analysis

{¶ 9} Although generally our analysis would begin with a determination of whether the Thomases are subject to the CSOA, we find that even if the CSOA did apply to the Thomases and Jackson Hewitt, the Thomases have failed to sufficiently plead that they were damaged by Jackson Hewitt's alleged failure to comply with the CSOA.[2]

{¶ 10} The Ohio CSOA's damages provision states: "A buyer injured by a violation of sections 4712.01 to 4712.14 of the Revised Code may bring an action for recovery of damages." R.C. 4712.10(A)(1). "Damages awarded under division (A)(1) of this section shall not be less than the amount paid by the buyer to the credit services organization, plus reasonable attorney's fees and court costs." R.C. 4712.10(A)(2).

{¶ 11} The Thomases' sole allegation in their first amended complaint regarding injury or damages is found at paragraph 34:

34. As a result of Jackson Hewitt's violations of the Credit Service Organization Act, Mr. and Mrs. Thomas and the proposed class have been damaged in an amount equal to all fees and charges they incurred in connection with Jackson Hewitt's arrangement of the RAL.

---

2. The issues raised in the Thomases' first amended complaint are ones of first impression in Ohio. However, similar issues against Jackson Hewitt have been raised in other states. See, e.g., *Gomez v. Jackson Hewitt, Inc.* (Md.Cir. June 18, 2009), No. 308418–V, 2009 WL 2199317; *Fugate v. Jackson Hewitt, Inc.* (Mo.Cir. Mar. 10, 2010), No. 0916–CV09937; *Carriere v. Jackson Hewitt Tax Serv., Inc.* (E.D.La.2010), 750 F.Supp.2d 694; *Harper v. Jackson Hewitt* (S.D.W.Va. Sept. 29, 2009), Civil Action No. 3:06–0919, 2009 WL 3160484; *Norris v. Jackson Hewitt* (June 28, 2010), S.D.Ind. No. 1:09–cv543–WTL–TAB, 2010 WL 2629723.

{¶ 12} Jackson Hewitt argued in its motion to dismiss that this bald assertion does not sufficiently allege injury in order to survive a Civ.R. 12(B)(6) dismissal. Instead, Jackson Hewitt maintained that the Thomases must allege that they suffered damages in some individual way and that it cannot be presumed that all violations of the CSOA result in injury.

{¶ 13} The Thomases, on the other hand, claim that injury was sufficiently alleged in their first amended complaint because they claimed that Jackson Hewitt failed to abide by the CSOA requirements (paragraphs 27–29) and that they paid Jackson Hewitt for RAL services (paragraphs 17–19, 23–25). On appeal, the Thomases explain that they were damaged by Jackson Hewitt's failure to abide by the requirements of the CSOA, so that they were prevented from making an informed decision about the services they were purchasing. They further argue that Jackson Hewitt's failure to comply reduced the value or usefulness of what the customer paid to receive and that Jackson Hewitt received money to which, under the law, they were not entitled.

{¶ 14} In support of their argument, the Thomases urge this court to follow the West Virginia District Court's decision in *Harper v. Jackson Hewitt* (Sept. 29, 2009), S.D.W.Va. No. 3:06–0919, 2009 WL 3160484, for the proposition that a CSO cannot be relieved of its liability for violating the CSOA.

{¶ 15} As in the case before this court, the *Harper* plaintiff brought a class-action complaint against Jackson Hewitt alleging that Jackson Hewitt had violated West Virginia's Credit Services Organization Act by failing to abide by the statutory regulations and requirements. The plaintiff in *Harper* not only alleged breach of contract in connection with Jackson Hewitt's RAL practice but also specifically maintained that Jackson Hewitt concealed profits and received secret kickbacks from the lending institution.

{¶ 16} The *Harper* court ultimately certified to the West Virginia Supreme Court of Appeals the issues of whether Jackson Hewitt was a credit service organization and whether the plaintiff was a buyer, so that the parties were subject to West Virginia's Credit Services Organization Act. Jackson Hewitt objected, claiming that certification was not necessary because the plaintiff was not injured by any violation of the statutes. Jackson Hewitt based this argument on the fact that the plaintiff admitted in his deposition that he was not unhappy with the RAL he received and, even in hindsight, he would get the same loan again, due to his financial situation at the time.

{¶ 17} The court, in addressing Jackson Hewitt's objection, concluded that this admission did not necessarily mean that the plaintiff was not injured by any statutory violations. The court specifically pointed to an allegation in plaintiff's complaint that, if proven to be true, meant that the credit-service organization was presumed liable to the buyer. The allegation involved Jackson Hewitt

charging the plaintiff fees for referring him to the lending institution, which is expressly prohibited by West Virginia law. The court concluded that this injury arose from the charge made or money received by the credit-service organization from the buyer.

> A CSO cannot be relieved of its responsibility under this provision and for violating this provision merely because a consumer may be willing to take the same course of action if he could go back in time. The injury exists if the provision is violated regardless of the consumer's hindsight decision-making.

*Harper* at 4.

{¶ 18} In the case before this court, the Thomases do not make any specific allegation regarding Jackson Hewitt receiving money from the buyer for the referral to the lending institution. Furthermore, Ohio's CSOA allows for the receipt of money from the buyer so long as the RAL was extended. R.C. 4712.07(B).

{¶ 19} Therefore, the Thomases' reliance on the *Harper* conclusion is misplaced because the proposition is fact-specific and law-specific to the *Harper* parties. Accordingly, we find the *Harper* decision distinguishable and not persuasive to this court's review of the case at hand.[3]

{¶ 20} Jackson Hewitt asks this court to follow the decision and rationale of the Southern District of Indiana in *Norris v. Jackson Hewitt* (June 28, 2010), S.D.Ind. No. 1:09–cv543–WTL–TAB, 2010 WL 2629723.

{¶ 21} In *Norris*, the plaintiff essentially raised the same arguments regarding damages and injury as the Thomases claim in the case before us. The *Norris* court rejected plaintiff's arguments and held that the plaintiff had failed to sufficiently allege damages in her complaint to survive Jackson Hewitt's motion to dismiss. The court concluded that the allegations in the complaint were merely conclusive presumptions that a party is damaged by any violation of the statutes.

{¶ 22} We find the *Norris* decision well reasoned and persuasive. Here, the Thomases have failed to sufficiently allege that they have suffered any injury as a result of Jackson Hewitt's alleged violations. The Thomases' sole allegation regarding their injuries is found in paragraph 34 of their complaint, in which they make a conclusory assertion that because Jackson Hewitt failed to comply with Ohio's CSOA, they were damaged. This unsupported conclusion does not satisfy the Thomases' obligation to provide grounds for their entitlement to relief.

---

3. On November 23, 2010, the West Virginia Supreme Court of Appeals concluded that Jackson Hewitt was a credit services organization and the plaintiff was a buyer under West Virginia law. See *Harper v. Jackson Hewitt* (2010), 227 W.Va. 142, 706 S.E.2d 63.

{¶ 23} The CSOA is not a strict-liability statute, nor are damages under the CSOA presumed. The CSOA permits only a person who has been injured by a violation of its provisions to bring an action for damages against the violator. We find that the Thomases have not alleged any facts in their first amended complaint that would support a finding that they suffered any actual injury. To quote *Norris*,

> To put it simply, in the absence of an allegation that [the plaintiff] would have acted differently (or that her situation would have been different in some practical way) if Jackson Hewitt had been in full compliance with the Act, [the plaintiff] cannot demonstrate that she was damaged by any violation of the Act by Jackson Hewitt.

*Norris* at 2.

{¶ 24} The Thomases' insufficient allegation of injury is fatal to their first amended complaint; thus it cannot survive a Civ.R. 12(B)(6) motion to dismiss. Therefore, we find no error in the trial court's decision dismissing the Thomases' claims against Jackson Hewitt.

{¶ 25} Because we find that the Thomases did not sufficiently allege damages in their first amended complaint, we need not address whether the Thomases, in this action, are "buyers" as defined by R.C. 4712.01(A) or whether Jackson Hewitt is a CSO as defined by R.C. 4712.01(C).

{¶ 26} Accordingly, the Thomases' sole assignment of error is overruled.

Judgment affirmed.

Stewart, P.J., and Cooney, J., concur.

