[Cite as *Williams-Diggins v. Permanent Gen. Assur. Corp.*, 2020-Ohio-3973.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

LINDSEY WILLIAMS-DIGGINS,      :

    Plaintiff-Appellant,      :

             No. 108846

v.      :

PERMANENT GENERAL ASSURANCE : 
CORPORATION OF OHIO,

    Defendant-Appellee.      :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 6, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-912705

---

### *Appearances:*

Dicello Levitt Gutzler L.L.C., Kenneth P. Abbarno, Mark A. DiCello, Justin J. Hawal, and Daniel R. Ferri, *for appellant.*

Ice Miller L.L.P., Steven D. Forry, Adam Arceneaux, and Jenny R. Buchheit, *for appellee.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiff-appellant, Lindsey Williams-Diggins,[1] appeals from the trial court's judgment that granted the Civ.R. 12(B)(6) motion to dismiss of defendant-appellee, Permanent General Assurance Corporation of Ohio ("Permanent General"). Finding no merit to the appeal, we affirm.

## I. Background

{¶ 2} Williams-Diggins insured his 2006 Chevrolet Impala LS with Permanent General under a private passenger auto ("PPA") policy that provided coverage for collision and comprehensive loss (the "Policy"). On March 19, 2018, he was involved in an accident while driving his car. After the accident, Williams-Diggins filed a claim for property damage with Permanent General. Permanent General determined that Williams-Diggins's vehicle was a total loss and, after a third-party vendor calculated that the fair market value of his vehicle was $2,968.00, paid him $1,431.00 ($2,968.00 less $542.00 salvage value and $1,000 deductible, plus $5.00 salvage fee). Williams-Diggins accepted the payment without objection and retained his vehicle.

{¶ 3} Williams-Diggins subsequently filed a class action complaint for breach of contract against Permanent General, alleging that Permanent General

---

[1] The complaint caption refers to Williams-Diggins as "Linset," although in the body of the complaint and subsequent pleadings, the parties refer to Williams-Diggins as "Lindsey." The pleadings also refer to Lindsey variously as "him" and "her." Because the majority of the references are to "him," we will refer to Williams-Diggins as "him" where necessary.

breached the insurance contract by not paying him sales tax, title fees, and registration fees as part of the actual cash value for the total loss of his vehicle. (Complaint, ¶ 2.) Williams-Diggins's class action claim was made on behalf of "all persons insured under a Permanent General Ohio PPA insurance policy who suffered a total loss covered claim and were not paid the full sales tax, title fees, and registration fees due under their policies." (Complaint, ¶ 2.)

{¶ 4} Permanent General filed a motion to dismiss under Civ.R. 12(B)(6), arguing that the trial court should dismiss the complaint because (1) Williams-Diggins lacked standing to bring suit because he never replaced his vehicle and thus did not incur any sales tax or title and registration fees, the damages sought in his complaint; and (2) the Policy did not require the payment of sales tax and fees.

{¶ 5} The trial court granted the motion to dismiss. It did not rule on Permanent General's standing argument, but found it was undisputed that the actual cash value of Williams-Diggins's vehicle prior to the accident was the proper measure of Permanent General's liability to Williams-Diggins. The court found that the Policy defined actual cash value as the fair market value of the property, which the court ruled is the price a willing buyer will pay a willing seller and does not include sales tax and fees. The trial court further found that "nowhere in the contract does the defendant promise to pay sales taxes and fees in the event the plaintiff, after accepting an actual cash value payment, decides to replace the damaged vehicle." Accordingly, the trial court found that the complaint did not state

a claim for which relief can be granted, and it dismissed the complaint. This appeal followed.

## II. Law and Analysis

{¶ 6} This court's review of a motion to dismiss pursuant to Civ.R. 12(B)(6) is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In resolving a Civ.R. 12(B)(6) motion, a court is confined to the allegations contained in the complaint and as an appellate court, we must independently review the complaint to determine if dismissal was appropriate. *Allstate Ins. v. Electrolux Home Prods.*, 8th Dist. Cuyahoga No. 97065, 2012-Ohio-90, ¶ 7, citing *McGlone v. Grimshaw*, 86 Ohio App.3d 279, 285, 620 N.E.2d 935 (4th Dist.1993). A complaint should not be dismissed unless it appears beyond all doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *Id.*, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Id.* at ¶ 8, citing *Byrd v. Faber*, 57 Ohio St.3d 56, 60, 565 N.E.2d 584 (1991). Nevertheless, legal conclusions or opinions couched as factual allegations are not given a presumption of truthfulness, *Thomas v. Jackson Hewitt, Inc.*, 192 Ohio App.3d 732, 2011-Ohio-618, 950 N.E.2d 578, ¶ 8 (8th Dist.), and unsupported conclusions of a complaint are not sufficient to withstand a motion

to dismiss.  *Id.*, citing *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324, 324, 44 N.E.2d 639 (1989).

{¶ 7}  In his single assignment of error, Williams-Diggins contends that the trial court erred in finding that Permanent General's promise in the Policy to pay the actual cash value of a totaled vehicle, where actual cash value is defined as the fair market value of the vehicle at the time of the loss, unambiguously excludes sales tax and fees.

{¶ 8}  In insurance policies, as in other contracts, words and phrases are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the contract.  *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, ___ Ohio St.3d ___, 2019-Ohio-4716, ¶ 13, ___ N.E.3d ___ (Kennedy, J., dissenting).  Where the language of an insurance contract is reasonably susceptible of more than one interpretation, the meaning of the ambiguous language is a question of fact.  *Co. Wrench, Ltd. v. Andy's Empire Constr. Inc.*, 8th Dist. Cuyahoga No. 94959, 2010-Ohio-5790, ¶ 16.  If there is no ambiguity, there is no issue of fact to be determined, and the terms will be given the effect called for by the plain language of the contract.  *Id.*; *Davis v. Loopco Indus., Inc.*, 66 Ohio St.3d 64, 66, 609 N.E.2d 144 (1993).  Here, applying the plain language of the Policy, we find that as a matter of law, the Policy required Permanent General to pay the actual cash value of Williams-Diggins's vehicle at the time of the loss and nothing more.

**{¶ 9}** Under the Policy, Permanent General promised to pay Williams-Diggins for "direct loss" to his vehicle "if that loss is caused by an accident resulting from a collision." (Policy, Physical Damage Coverage, pg. 18.) "Loss" is defined in the Policy as "sudden, direct and accidental physical damage to, or theft of, property." (Policy Definitions, ¶ 25, pg. 6.) There is no dispute that Williams-Diggins's vehicle was damaged in a collision, and that as a result, he suffered a "loss" under the Policy and Permanent General had a duty to pay.

**{¶ 10}** Although Permanent General promised to pay Williams-Diggins for his "loss," it limited its liability under the Policy to "the lesser of":

    a. The actual cash value, at the time of the loss, of the damaged or stolen auto, or its parts if the loss is limited to parts;

    b. The amount necessary to repair physical damage to the auto, or its parts if the loss is limited to parts, to return it to its pre-loss condition. No amount for any diminution of value or other change in market value of the auto will be included in, or paid with, the amount to repair; or

    c. The amount necessary to replace the damaged or stolen auto, or its parts if the loss is limited to parts, with that of like kind and quality.

(Policy, Limits of Liability, ¶ 1, pg. 22.)

**{¶ 11}** With respect to "actual cash value," the Policy stated:

2. "Actual cash value" means, at the time of the accident or loss, the fair market value of the stolen or damaged property. The fair market value is affected by:

a. The age, mileage and physical condition of the property; and

b. Depreciation and prior damage, which may reduce value.

(Policy, Definitions, ¶ 2, pg. 4.)

{¶ 12} This court has recognized that in Ohio, actual cash value is established by *either* the fair market value of the property at the time of the loss *or* the replacement cost of the vehicle less depreciation for age and condition. *Modesty v. Scottsdale Surplus Lines*, 8th Dist. Cuyahoga No. 86912, 2006-Ohio-4274, ¶ 11, citing *Asmaro v. Jefferson Ins. Co. of New York*, 62 Ohio App.3d 110, 114, 574 N.E.2d 1118 (6th Dist.1989). *See also Schaller v. Natl. Alliance Ins. Co.*, 496 F.Supp.2d 890, 897 (S.D.Ohio 2007), citing *Jones v. Auto Owners Mut. Ins. Co.*, 6th Dist. Lucas No. L-98-1297, 1999 Ohio App. LEXIS 3012, 11-12 (June 30, 1999). In the absence of any specific limiting language in the contract, either measure of damages is acceptable in computing the amount of the loss. *Modesty* at *id.*

{¶ 13} In this case, however, it is apparent that when it drafted the Policy, Permanent General specified the definition it was using for the term actual cash value: the fair market value of the property at the time of the loss. As this court has held, and the trial court properly determined, "'fair market value' is defined as 'that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market,'" and does not generally include sales tax and fees. *Wray v. Stvartak*, 121 Ohio App.3d 462, 471, 700 N.E.2d 347 (8th Dist.1997). *See also State Farm Mut. Auto. Ins. Co. v. Cheeks*, 5th Dist. Stark No. 2013CA00135, 2014-Ohio-410, ¶ 15-16; (distinguishing between fair market value and sales tax and fees); *State Bank N.A. v. Unruh*, 2d Dist. Montgomery No. 13143, 1992 Ohio App. LEXIS 3067, 11 (June 12, 1992) (distinguishing fair market value and sales tax); *Coulter v. Schwab*, 1st Dist. Hamilton No. C-880400, 1989 Ohio App. LEXIS 4075

(Nov. 1, 1989); *Porter v. Cuyahoga Cty. Bd. of Revision*, 50 Ohio St.2d 307, 312, 364 N.E.2d 261 (1977).

**{¶ 14}** There is no ambiguity in the Policy: Permanent General promised to pay the actual cash value of the *damaged* vehicle and nothing more. Under the unambiguous terms of the Policy, Permanent General had no duty to pay Williams-Diggins sales tax and fees, which he concedes are associated with a *replacement* vehicle.[2] Therefore, Williams-Diggins failed to state a claim upon which relief can be granted, and the trial court properly dismissed the complaint.

### A. Fair Market Value

**{¶ 15}** Williams-Diggins contends that the trial court's interpretation of the Policy was incorrect, however, because "in Ohio, fair market value is measured as replacement costs minus depreciation and involves issues of fact that preclude dismissal." He asserts that in Ohio, fair market value can be calculated in one of three ways: (1) replacement costs less depreciation; (2) a market data approach using recent sales of comparable property; or (3) an income or economic approach based upon capitalization of net income. He further contends that "Ohio courts recognize that the measurement of fair market value raises factual questions" that a jury should consider. Accordingly, he contends that the trial court erred in concluding that Permanent General's promise to pay actual cash value

---

[2]In paragraph 7 of his complaint, he alleges that "[s]ales tax, title fees, and registration fees are a mandatory part of the costs to replace of [sic] every PPA vehicle insured by Permanent General in Ohio * * *." Paragraph 34 of the complaint states that "sales taxes are mandatory and apply to the replacement of all total loss vehicles in Ohio."

unambiguously precluded the payment of sales tax and mandatory transfer fees involved in replacing his vehicle.

{¶ 16} But the three methods for determining fair market value as cited by Williams-Diggins appear to be limited to calculating fair market value in the context of real property appropriation. *See Kent v. Atkinson*, 11th Dist. Portage No. 2010-P-0084, 2011-Ohio-6204, ¶ 43. The same is true for Williams-Diggins's claim that fair market value raises factual questions; the cases he cites to support this argument are all real estate appropriation cases.

{¶ 17} Williams-Diggins cites to no Ohio case where an Ohio court has concluded that the fair market value of a vehicle must be established using one of the three methods listed above. Nor does he cite an Ohio case where a court found that fair market value in the context of a vehicle's actual cash value in an automobile PPA insurance policy includes replacement costs such as sales tax and fees. Instead, he cites to decisions from other states that interpreted actual cash value or fair market value in the context of homeowner, commercial, or property insurance policies,[3] and contends these cases demonstrate that in the context of a PPA

---

[3] *Trinidad v. Fla. Peninsula Ins. Co.,* 121 So.3d 433 (Fla. App. 2013) (homeowner's insurance policy); *Holden v. Farmers Ins. Co. of Wash.*, 239 P.3d 344 (Wash. 2010) (renter's insurance policy); *Goff v. State Farm Fla. Ins. Co.*, 999 So.2d 684 (Fla. App. 2008) (homeowner's insurance policy); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F.Supp.2d 1010 (D. Ariz. 2006) (homeowner's insurance policy); *Ghoman v. New Hampshire Ins. Co.*, 159 F.Supp.2d 928 (N.D. Tex. 2001) (commercial property insurance policy); *Am. Reliance Ins. Co. v. Perez*, 689 So.2d 290 (Fla. App. 1997) (homeowner's insurance policy); *Brand Distrib., Inc. v. Ins. Co. of N. Am.*, 532 F.2d 352 (4th Cir.1976) (jeweler's block policy).

insurance policy, fair market value includes consideration of the replacement cost minus depreciation method. These cases are not binding authority, however, because they do not cite Ohio law, and they are not persuasive because they do not address sales tax and title and transfer fees in the context of a total loss vehicle insured by a PPA insurance policy, such as Williams-Diggins's vehicle.

{¶ 18} We recognize that one of the cases cited by Williams-Diggins — *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F.Supp.3d 1074 (M.D.Fla. 2019),[4] – does discuss sales tax and title transfer fees in the context of a total loss vehicle insured through a policy that required the insurer to pay the actual cash value of the vehicle. However, unlike the Policy in this case, the policy at issue in *Sos* did not define actual cash value. *Id.* at 1079. The *Sos* court found that "when faced with a policy leaving actual cash value undefined, Florida courts have found the term to mean replacement cost minus depreciation," *id.*, and relying on that authority, the court found that actual cash value under the policy in *Sos* meant replacement cost minus depreciation and included sales tax and fees. *Id.* at 1080.

{¶ 19} Unlike as in *Sos*, however, the term "actual cash value" was not left undefined in the Policy at issue in this case. Permanent General specifically defined actual cash value as the fair market value of the property at the time of the loss, not as replacement cost minus depreciation. We must "presume the intent of the parties

---

[4] After oral argument, Williams-Diggins filed as supplemental authority a subsequent order from the district court in *Sos*, wherein the court granted summary judgment to the class plaintiffs. *Sos v. State Farm Mut. Auto. Ins. Co.*, Case No. 6:17-cv-980-Orl-40LRH (M.D.Fla. July 8, 2020).

is reflected in the language used in the policy." *Beverage Holdings, L.L.C.*, 2019-Ohio-4716 at ¶ 13, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 707 N.E.2d 1256, ¶ 11. If the parties had intended to include sales tax and fees in the Policy, they could have done so. Furthermore, to interpret the Policy to include sales tax and fees would rewrite the Policy for the parties, something this court may not do. *Bluemile, Inc. v. Atlas Indus. Contrs., Ltd.*, 10th Dist. Franklin Nos. 16AP-789 and 16AP-791, 2017-Ohio-9196, ¶ 23 ("A court may not rewrite a contract under the guise of construing it.").

## B. The Insuring Clause

{¶ 20} Williams-Diggins next argues that the trial court's interpretation of the Policy was incorrect because "sales tax and transfer fees fall within the insuring clause of the Policy." He contends that the Policy promises to pay for a loss by either directly replacing the vehicle or paying the replacement cost in money, and that because replacing the vehicle or paying the replacement cost in money would necessarily include sales tax and transfer fees, sales tax and transfer fees are "affirmatively encompass[ed]" in the Policy. This argument is also without merit.

{¶ 21} The insuring clause in the Policy provides that Permanent General "will pay for direct loss to [t]he covered auto * * * if that loss is caused by an accident resulting from a collision." (Policy, Insuring Agreement, pg. 18.) The Policy further specifies that "As we [i.e. Permanent General] see fit, we will (a) pay for the loss in money; or (b) repair or replace the damaged or stolen property." (Policy, Payment of Loss, pg. 23.) Thus, the Policy provides that Permanent General will *either*

replace the vehicle or pay for damage to the vehicle. Permanent General does not, as Williams-Diggins claims, promise to replace the vehicle or pay for the amount of the replacement in money.

**C. Is the payment of sales tax and fees implied in the Policy?**

{¶ 22} Next, Williams-Diggins contends that the Policy explicitly excludes payment of charges and fees only where they are not necessary to replace the property:

> We are not liable for, nor will we pay, any fees and charges that are not party of the necessary cost to repair the loss or replace the covered auto. This may include, but is not limited to, any fee or charge to prepare an estimate, tear down, handle or negotiate or any other fee or charge which is not part of the necessary cost to * * * replace the covered auto. You will be responsible for paying any such fees or charges.

(Policy, Physical Damage Coverage, Additional Terms & Duties, pg. 18.)

{¶ 23} He argues that the presence of this clause "implies that if a charge or fee *is* necessary for vehicle replacement — like sales tax or mandatory transfer fees — it will be paid under the Policy." He contends that the trial court's interpretation of the Policy as excluding sales tax and fees would render the above clause superfluous and unnecessary in contravention of Ohio law. *Gotham v. Basement Care, Inc.*, 9th Dist. Summit No. 29105, 2019-Ohio-3872, ¶ 10, citing *Transtar Elec. Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 195, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 26 ("Courts should not interpret contracts in a way that renders at least one clause superfluous or meaningless.").

{¶ 24} Williams-Diggins's argument fails because the Policy provision he relies upon applies only if Permanent General chooses to repair or replace the

vehicle. Because Permanent General did not repair or replace Williams-Diggins's vehicle, but instead chose to pay the amount of the loss (a choice allowed by the Policy), this provision has no bearing on Williams-Diggins's loss, or the trial court's interpretation of the term actual cash value in the context of payment for a total loss vehicle.

### D. An Indemnity Policy

{¶ 25} Williams-Diggins next contends that the Policy is an indemnity policy, and that contracts of indemnity are intended to make the insured whole by putting the insured in his or her pre-loss condition. He contends that in his pre-loss condition, he owned and operated his vehicle with the necessary sales tax and transfer fees having been paid. He asserts that indemnity principles would require that he be placed in a position after his loss where he would not be forced to pay sales tax and fees in order to own and operate a comparable vehicle, but that under the trial court's interpretation of the Policy, he would be required to pay sales tax and transfer fees in order to get back to his pre-loss condition.

{¶ 26} Permanent General concedes that the Policy is an indemnity policy. Nevertheless, as this court has recognized, "[a]n insurance company is only liable according to the terms and provisions of its contract, and not otherwise." *White v. Ogle*, 67 Ohio App.2d 35, 39, 425 N.E.2d 926 (8th Dist.1979), citing *Wood v. Aetna Life Ins. Co.*, 112 Ohio App.560, 171 N.E.2d 354 (1st Dist.1960). Thus, Permanent General's obligation to indemnify Williams-Diggins required it to restore him to the same position as before the event *only to the extent required by the Policy terms.*

Permanent General paid Williams-Diggins for his loss, which according to the Policy was limited to the fair market value of his vehicle. Nothing in the Policy required Permanent General to pay sales tax and fees. Accordingly, Williams-Diggins's indemnity argument is without merit.

{¶ 27} Williams-Diggins contends that *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243 (Ind.2005), supports his contention that he should be made "whole" by the payment of sales tax and transfer fees because the Policy was an indemnity policy. (Appellant's Reply Brief, fn. 3.) *Allgood* directly refutes his contention, however. In *Allgood*, the insurer paid the cost of repairs to the car owner's vehicle under its collision coverage, but did not compensate her for diminution in value of the repaired car as a result of having been damaged. *Id.* at 245. The car owner argued that the insurer's agreement to indemnify her for her loss was an agreement to make her whole, and thus, that unless a repair restored the fair market value of the damaged vehicle to its pre-crash level, the insurer was obligated to pay for the decline in market value after the repair to fully indemnify her loss. *Id.* at 245. The Indiana Supreme Court disagreed. It stated that "under common law tort doctrines, the measure of damages recoverable from a tortfeasor is generally adequate compensation for the loss sustained." *Id.* at 246. "But tort doctrines are not relevant here. Making a party 'whole' is the province of tort law, but has no application here. [The plaintiff's] claim is based solely on her policy, so her claim depends entirely on the terms of the contract." *Id.* Continuing, the court stated, "[a]n insurance

company's obligation to indemnify requires it to restore the insured to the same position as before the event only to the extent required by the policy terms." *Id.*

{¶ 28} The court found that the policy limited the insurer's liability to the lesser of actual cash value of the damaged property or the amount necessary to repair or replace the property with other property of like kind and quality. *Id.* It found that the limit of liability provision was unambiguous and barred the plaintiff's claim for diminished value because the phrase "like kind and quality" unambiguously referred only to replacement, not to repairs. *Id.* at 248. The court also found that the policy provided that under the limit of liability provision, the insurer could choose to pay either the actual cash value of the vehicle or the amount necessary to repair, "not some combination of the two." *Id.* The court noted that to hold that the insurer was required to pay for diminution in value when it repaired a vehicle "would render meaningless its expressed right" to elect to repair and replace rather than pay the actual cash value of the automobile at the time of the loss. *Id.*

{¶ 29} As in *Allgood*, we reject Williams-Diggins's contention that the policy requires that he be made "whole" by Permanent General's payment of sales tax and transfer fees, even though Permanent General paid him the actual cash value of his vehicle. His claim is based solely on the Policy, so his claim depends solely on the Policy terms. Permanent General paid Williams-Diggins for his loss, which was defined in the Policy as the actual cash vehicle at the time of loss. Nothing in the Policy required Permanent General to pay Williams-Diggins sales tax and transfer fees associated with a replacement vehicle, especially where Permanent General did

not elect to replace the vehicle, and Williams-Diggins does not allege that he replaced it. To find otherwise would "render meaningless" Permanent General's "expressed right" under the Policy to limit its liability to the actual cash value of the vehicle, rather than to repair or replace the vehicle.

### E. Is it reasonable to interpret "fair market value" to include sales tax and fees?

{¶ 30} Williams-Diggins next contends that "at a minimum," it is reasonable to interpret the Policy as including coverage for sales tax and transfer fees in the event of a total loss, and therefore, the trial court erred in dismissing his complaint. He argues that if an insured's interpretation is reasonable, Civ.R. 12(B)(6) dismissal is inappropriate, and the insured must be provided an opportunity to show entitlement to relief.

{¶ 31} Williams-Diggins's argument is essentially an argument that the Policy language at issue is ambiguous. If a contract is clear and unambiguous, its interpretation is a matter of law and there is no issue of fact to be determined. *Ramey v. Berns Properties, Inc.*, 8th Dist. Cuyahoga No. 79746, 2002 Ohio App. LEXIS 713, 5 (Feb. 21, 2002). "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller*-Gonzalez, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 16. The fact that parties to a contract adopt conflicting interpretations of the contract does not create ambiguity where none exists. *Complete Gen. Const. Co. v. Koker Drilling Co.*, 10th Dist. Franklin No. 02AP-63, 2002-Ohio-4778, ¶ 13.

{¶ 32} We find no ambiguity. There is no language in the Policy that can be read as an express or implied promise to pay sales tax and transfer fees. And there is nothing ambiguous about Permanent General's promise to pay the actual cash value of the damaged property and not sales tax and transfer fees associated with the purchase of a replacement vehicle. The Policy did not define actual cash value as the amount it would cost to replace Williams-Diggins's vehicle; it plainly and unambiguously defined actual cash value as the fair market price of his vehicle at the time of the loss.

{¶ 33} Williams-Diggins's continued attempt to conflate replacement costs with the actual cash value of the vehicle so as to include the payment of sales tax and fees is not a reasonable interpretation of the Policy, and the trial court did not err in rejecting it. *See, e.g.*, *Jenkins v. State Farm Fire & Cas. Co.*, 5th Dist. Perry No. 12-CA-5, 2012-Ohio-6076, ¶ 35 (policy that promised to pay actual cash value "clearly and unambiguously provided that [the insurer] would pay the actual cash value at the time of the loss to the damaged property"); *Coleman v. Garrison Prop. & Cas. Ins. Co.*, N.D.Ill. No. 19 C 1745, 2019 U.S. LEXIS 127940, 7-8 (July 31, 2019) (where there was no express language in the policy that promised to pay sales tax, title fees, and registration fees, and the policy defined actual cash value as the amount it would cost to *buy* a comparable vehicle, and not as the amount it would cost to *replace* plaintiff's vehicle, the definition was limited to the price of the comparable vehicle and did not include attendant replacement costs such as sales tax, title fees, and registration fees).

{¶ 34} Williams-Diggins's supplemental authority, *Perry v. Allstate Indemn. Co.*, 6th Cir. No. 18-4267, 2020 U.S. App. LEXIS 8555 (Mar. 18, 2020), offers no support for his argument. The issue in *Perry* was whether the homeowner's insurance policy permitted the insurer to depreciate labor costs in calculating actual cash value. The Sixth Circuit, interpreting Ohio law, stated that "[i]f the policy is ambiguous and the insured's interpretation is reasonable, the insured prevails." *Id.* at 7. Finding that "depreciation" was undefined in the policy, the court concluded that the insured's interpretation (that in calculating actual cash value, depreciation did not include labor costs) was a "fair reading" of an ambiguous term and, therefore, her interpretation prevailed over the insurer's. *Id.* at 8.

{¶ 35} But here, as discussed above, there is no ambiguity. The Policy clearly and unambiguously defined actual cash value as the fair market value of the damaged vehicle at the time of loss. In light of the plain and unambiguous Policy language, Williams-Diggins's interpretation of the term actual cash value as including sales tax and fees is neither a "reasonable" nor "fair" reading of the Policy.[5]

---

[5] Citing Ohio Adm. Code 3901-1-54(I)(2)(a), *Perry* noted that the Ohio Administrative Code defines actual cash value as "the replacement cost of the property at the time of loss, including sales tax, less any depreciation." Any attempt by Williams-Diggins to argue that this definition supports his argument would be disingenuous. Ohio Adm. Code 3901-1-54(I)(2)(a) applies only to fire and extended insurance coverage policies; it does not apply to PPA insurance policies. In the context of automobile insurance policies, Ohio Adm. Code 3901-1-54(H)(6)(c) provides that in settlement of claimants' automobile total losses, an insurer who elects to replace a vehicle shall pay all applicable taxes and fees incident to transfer of ownership of the automobile; Ohio Adm. Code 3901-1-54(H)(7)(f) provides that an insurer who elects to pay actual cash value shall pay sales tax if the insured buys a replacement vehicle within 30 days of receipt of the cash settlement. Thus, the Ohio Administrative Code supports Permanent General's

**F. Are there issues of fact that preclude dismissal?**

{¶ 36} Finally, Williams-Diggins argues that the trial court erred in granting the Civ.R. 12(B)(6) motion because his complaint raised factual issues that could not be resolved at the pleadings stage. Specifically, he contends that because he alleged in his complaint that the fair market value of his vehicle included sales tax and fees, the trial court erred in not accepting this factual allegation as true, transforming the issue of fact into a legal issue, and then resolving the issue against him. Williams-Diggins's argument is specious.

{¶ 37} First, none of the cases that he cites to support his assertion that "determining the fair market value of property requires resolution of issues of fact" involve the interpretation of that term in an insurance contract on a Civ.R. 12(B)(6) motion to dismiss. *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 5th Dist. Delaware No. 98CAE03018, 1998 Ohio App. LEXIS 4048 (Aug. 25, 1998), is an appeal from the trial court's decision granting summary judgment on a motion for summary judgment, and *Noll v. Veti*, 3d Dist. Union No. 14-05-11, 2005-Ohio-5754, and *Passyalia v. Moneir*, 2017-Ohio-7033, 95 N.E.3d 723 (5th Dist.), are appeals from divorce decrees in which the trial court in its discretion valued marital assets. They are not relevant to the contract interpretation issues raised by Permanent General's Civ.R. 12(B)(6) motion to dismiss.

---

interpretation of the Policy; i.e., that it had no duty to pay Williams-Diggins sales tax and fees because it paid him the actual cash vehicle of his damaged vehicle and he did not replace it.

{¶ 38} Furthermore, Williams-Diggins's claim that paragraphs 26, 31, and 34-36 of his complaint contain factual allegations that the actual cash value of his vehicle includes sales tax and transfer fees is disingenuous. Paragraph 26 of his complaint contains the Policy definition of actual cash value. Paragraph 31 contains portions of the Policy limitation of liability provision. And paragraphs 34-36 contain allegations regarding Ohio's imposition of sales tax, title transfer fees, and registration transfer fees. Quite simply, there are no allegations in the complaint regarding a factual issue of fair market value or any factual allegations that the fair market value of Williams-Diggins's vehicle included sales tax and fees.

{¶ 39} Permanent General's motion to dismiss, and the trial court's order of dismissal were premised upon issues of contract interpretation. The trial court correctly determined that the Policy did not require Permanent General, having elected to pay the actual cash value of Williams-Diggins's damaged vehicle, to pay sales tax and fees associated with a replacement vehicle (especially where the vehicle was never replaced). No determination of fact can alter the unambiguous Policy, and the trial court therefore properly dismissed Williams-Diggins's complaint for failure to state a claim upon which relief can be granted. The assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
EILEEN T. GALLAGHER, A.J., CONCURS WITH SEPARATE CONCURRING OPINION

EILEEN T. GALLAGHER, A.J., CONCURRING:

{¶ 41} I concur with the majority's resolution of Williams-Diggins's sole assignment of error. I agree with the majority's well-reasoned conclusion that Williams-Diggins failed to state a claim upon which relief can be granted because Permanent General had no obligation to pay Williams-Diggins sales tax and fees as part of the vehicle's actual case value.

{¶ 42} However, I do not join the majority's discussion of *Kent v. Atkinson*, 11th Dist. Portage No. 2010-P-0084, 2011-Ohio-6204; *Trinidad v. Fla. Peninsula Ins. Co.,* 121 So.3d 433 (Fla.App.2013) (homeowner's insurance policy); *Holden v. Farmers Ins. Co. of Washington*, 169 Wash.2d 750, 239 P.3d 344 (2010) (renter's insurance policy); *Goff v. State Farm Fla. Ins. Co.*, 999 So.2d 684 (Fla.App.2008) (homeowner's insurance policy); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp.2d 1010 (D.Ariz.2006) (homeowner's insurance policy); *Ghoman v. New Hampshire*

*Ins. Co.*, 159 F.Supp.2d 928 (N.D. Tex. 2001) (commercial property insurance policy); *Am. Reliance Ins. Co. v. Perez*, 689 So.2d 290 (Fla.App.1997) (homeowner's insurance policy); *Brand Distrib., Inc. v. Ins. Co. of N. Am.*, 532 F.2d 352 (4th Cir.1976) (jeweler's block policy). The majority concludes that these cases are distinguishable from the present case because they do not involve automobile insurance policies.

{¶ 43} In my view, there may be circumstances where the calculation methods described in foregoing cases, including "replacement costs less depreciation," will assist a reviewing court in interpreting the provisions of an ambiguous automobile insurance policy. *See Ostendorf v. Grange Indemn. Ins. Co.*, S.D. Ohio No. 2.19-CV-1147, 2020 U.S. Dist. LEXIS 5163 (Jan. 13, 2020) (assessing the application of the replacement cost minus depreciation method to an automobile insurance policy that includes an ambiguous definition of "actual cash value").

{¶ 44} Nevertheless, the cases relied on by Williams-Diggins are not applicable in this case due to the unambiguous provisions of Williams-Diggins's Policy with Permanent General. The Policy expressly defines the circumstances affecting the calculation of a vehicle's fair market value, and clearly differentiates "actual cash value" from replacement costs. Sales tax and fees are not contemplated under the Policy's provisions concerning the payment of the "actual cash value" for the damaged or stolen vehicle. Accordingly, I agree with the majority's determination that the terms of the Policy prevail.